[No. 12. Decided Febuary 13, 1890.]

TERRITORY OF WASHINGTON, *on the relation of George O. Kelly*, v. J. P. STEWART, A. J. MILLER, A. C. CAMPBELL, A. G. MATTHEWS AND W. C. GIBBS.

CONSTITUTIONAL LAW — DELEGATING LEGISLATIVE FUNCTIONS TO COURTS.

A statute authorizing the creation of a municipal corporation by a judicial court, upon petition of a majority of the inhabitants of the territory to be incorporated, is unconstitutional, as delegating legislative functions to the court. (DUNBAR, J., dissents.)

. *Appeal from District Court, Pierce County.*

The facts are fully stated in the opinion.

*F. Campbell*, Prosecuting Attorney, *C. H. Hanford* and *Thomas Carroll*, for appellant.

Section 1889, Rev. St. U. S., together with chap. 168, pp. 101–24, U. S. Statutes at Large, of Congress, second session, conferring upon the legislature the right to create municipal corporations, does not contemplate or permit the legislature to delegate such rights to courts or judges. *City of Galesburg v. Hawkinson*, 75 Ill. 153; *People v. Carpenter*, 24 N. Y. 89; *People v. Nevada*, 6 Cal. 143.

In states where the right is recognized the courts have universally held that such statutes do not imply any such power against private consent; the power is strictly construed, and farming lands cannot be included against the owner's consent. Lewis' Appeal, 56 Pa. St. 163; Borough of Blooming Valley, 56 Pa. St. 66; *People ex rel. Shumway v. Bennett*, 29 Mich. 451 (18 Am. Rep. 115-6).

The order incorporating the "Town of Puyallup," is void. The power to make such an order is not judicial and not vested in said judge by law. *People v. Bennett, supra; People v. Nevada, supra.*

*B. F. Jacobs*, and *Town & Likens*, for appellees.

What is a legislative function? A predetermination of

what the law shall be for the regulation of all future cases
falling under its provisions.    *Bates v. Kimball*, 2 Chip.
D. (Vt.) 77; Cooley, Const. Lim. (5th ed.), 109, 110; *Newland v. Marsh*, 19 Ill. 383.

What is a judicial function or power?   " To adjudicate
upon and protect the rights and interests of the citizens,
and to that end to construe and apply the law, is the peculiar province of the judicial department." *Cincinnati, etc.,
R. Co. v. Commissioners of Clinton County*, 1 Ohio St. 77.
Examine, also, *King v. Dedham Bank*, 15 Mass. 447; *Gordon v. Ingraham*, 1 Grant Cas. 152; *Beebe v. State*, 6 Ind.
501; *Taylor v. Place*, 4 R. I. 324.

A statute may be conditional and its taking effect may
be made to depend upon some subsequent event.   *Burlington v. Leebrick*, 43 Iowa, 252; *Baltimore v. Clunet*, 23
Md. 449;  *State v. Kirkley*, 29 Md. 85; *Walton v. Greenwood*, 90 Me. 356.

Act of territorial legislature approved February 2, 1888,
does not delegate legislative authority to the courts, as
the legislature by that act prescribes the liabilities, duties,
powers and privileges of said corporations, and the statute,
and not the court, determines the extent and nature of
the powers of the corporation.   *Mayor, etc., v. Shelton*, 1
Head (Tenn.), 24; *Kayser v. Trustees of Bremen*, 16 Mo.
88; *Burlington v. Leebrick*, 43 Iowa, 252.

Said act is not unconstitutional because of certain powers
and duties conferred upon the courts in relation to the
mode of organizing said towns, as these duties are judicial
in their nature, and the legislature, and not the court, prescribes the powers, duties and liabilities of which the
corporation is possessed. *Kayser v. Trustees of Bremen*,
16 Mo. 88; *Mayor, etc., v. Shelton*, 1 Head, 24; *Burlington v. Leebrick*, 43 Iowa, 252; *Bank of Chenango v. Brown*,
26 N. Y. 467;  *People v. Solomon*, 51 Ill. 37; *Burgess v.
Pue*, 2 Gill, 11; *Hammond v. Haines*, 25 Md. 541; *Commonwealth v. Montrose*, 52 Pa. St. 391.

The opinion of the court was delivered by

ANDERS, C. J.—This action was brought in the district court of the Second judicial district of Washington Territory, holding terms at Tacoma, in and for Pierce county, to enquire and determine by what warrant or authority the appellees claim to exercise the powers of a board of trustees of the town of Puyallup, in that county, and to oust them from office as such board of trustees and to dissolve said municipal corporation.    The complaint states:

"First, that the above named defendants, at a place called Puyallup, in Pierce county, Washington Territory, do now unlawfully act as a municipal corporation under the name and style of the town of Puyallup, without being legally incorporated, and as a board of trustees of said alleged municipal corporation; second, that said defendants act as such corporation and exercise the powers of such board of trustees under color of authority conferred by an order made by the judge of this court, at chambers, in the city of Tacoma, Washington Territory, on the 31st day of July, A.D. 1888, and entered upon record in this court; third, that a certified copy of the record of said order and of the proceedings in the matter relating to the alleged incorporation of said town of Puyallup, marked exhibit A, is hereto annexed for reference and made a part of this complaint, and a correct plat showing the boundaries of said alleged incorporated town of Puyallup, as defined in said order, and the location of the relator's farm hereinafter mentioned, marked exhibit B, is hereto annexed for reference and made a part of this complaint; fourth, that said order is void and of no effect, for the same was made by the judge aforesaid, upon the *ex parte* application of John Beverly, Esq., without a hearing being granted to the relator or to any of the inhabitants or owners of property within the boundaries of said alleged town of Puyallup, and without any notice being given of said application, and no opportunity was at any time given to the relator, or any other person whomsoever, to remonstrate against or oppose the incorporation of said town, or to question the validity or sufficiency of the petition upon which said order was made, or to make complaint as to the boundaries of said alleged

town; and no legal or good evidence was produced before the judge upon which to base the findings of fact recited in said order, and power to make said order is not judicial and not vested in said judge by law; fifth, that the relator is the owner of real property situated within the boundaries of said alleged town, as defined by said order, and he and many others, owners of property situated within said alleged town, have not consented to the incorporation of said town, and are unwilling to have said town incorporated with boundaries including their said property, for that said property is partly improved and cultivated farming land and no part thereof is platted into town lots and streets, and they are unwilling to consent to the laying out of and extending streets across their said land, or to taxation of said land by such alleged municipal corporation."

To this complaint defendants demurred for the alleged reason that the same did not state facts sufficient to constitute a cause of action. The district court sustained the demurrer, and caused judgment for costs to be entered against the plaintiff. From this judgment plaintiff appeals to this court, and we are called upon to determine the question of the legal existence of the town of Puyallup, which also involves the validity of the act of the legislature approved February 2, 1888, entitled "An act for the incorporation of towns and villages," the first section of which, so far as is material to this case, is as follows: " Where a majority of the taxable inhabitants of any town or village within this territory, present a petition to the judge of the district court having jurisdiction of real actions in such county, setting forth the metes and bounds of such town or village, together with the adjacent bounds in all not exceeding in area one square mile, which they desire to include therein, and praying that they may be incorporated, and police established for their local government, and the judge of the district court shall be satisfied that a majority of the taxable inhabitants of such town or village, as shown by the last assessment roll of said county, shall have signed such petition, such judge of

the district court shall cause such petition to be entered in full on the records of such court, together with the names of the petitioners, and shall thereupon make and record an order declaring such town or village duly incorporated, designating in such order the metes and bounds thereof and the names of such town or village, and thenceforward the inhabitants within such metes and bounds are a body politic and corporate." The proceedings for incorporating the town were inaugurated by the presentation to the judge of the district court, by one John Beverly, of a petition signed by sixty-three persons, therein representing themselves to be a majority of the taxable inhabitants of the town of Puyallup, praying that they might be incorporated under the name of the town of Puyallup, and police established for their local government, and that trustees be appointed for the government of said town. The petition also specified and defined the metes and bounds of the proposed territory to be incorporated, and alleged the area thereof to be not exceeding in all one square mile. On the 31st day of July, 1888, the judge of the district court, at chambers, in the city of Tacoma, in Pierce county, in response to the prayer of the petition, made and entered of record an order declaring the town of Puyallup to be duly incorporated under and by virtue of the laws of Washington Territory, and in said order appointed defendants as a board of trustees of the town, in accordance with ? 2 of the incorporation act.

It is admitted by the demurrer, and was conceded by counsel on the argument of this case, that the relator is the owner of real property situated within the boundaries of the territory described in the petition and defined by order of the court, that he did not consent to the incorporation of the town, that he was unwilling to have it incorporated with boundaries including his property, that his said real estate is partly improved and cultivated farming land, not platted into town lots and streets, and that he is unwilling

to consent to the laying out of and extending streets across the same, that he is unwilling to submit to taxation of his land by said municipal corporation, that no notice of the presentation of the petition was given, and that the relator had no opportunity to be heard or to remonstrate against or oppose the incorporation of the town, or to question the validity of the order of the judge, or to make complaint as to the boundaries of the proposed municipal corporation.

The proceedings are assailed by appellant as not being in accordance with the law relating thereto. He objects that the petition is defective in not stating that the signers thereof were a majority of the taxable inhabitants of the town, according to the last assessment roll of the county, and that the order of the judge was made upon the certificate of the county assessor, who is not empowered by any law to so certify; that there was no evidence before the judge or court to warrant the order, and that the order was made without jurisdiction of the subject-matter by the court. As the law requires that the petition to be presented to the judge shall be signed by a majority of the taxable inhabitants of the town or village to be incorporated, and that the judge shall be satisfied (in some way not specified by law) that a majority of the taxable inhabitants of the town or village, as shown by the last assessment roll of the county, shall have signed the petition, it is quite doubtful whether an omission to state in the petition that the petitioners are a majority of the taxable inhabitants, as shown by the last assessment roll of the county, is not a matter substantially affecting the subsequent proceedings. But, however this may be, we are not disposed to hold the incorporation invalid on that account, but will assume that the law was substantially complied with.

We now come to the consideration of the validity of the law itself. The object of the act of the legislature was the incorporation of towns and villages, as expressed in the title, and as the meaning of the expression " towns and

villages " is not defined by the law, we must presume that
the words were intended to be used in their ordinary
acceptation, as meaning an aggregation of houses and inhab-
itants more or less compact. The word town was origi-
nally from the Anglo-Saxon word " tun," an inclosure, and
meant a collection of houses inclosed by a wall. Ander-
son's Law Dictionary, title, "Town." "The fundamental
idea of a municipal corporation proper, both in England
and in this country, is to invest compact or dense popula-
tions with the power of local self-government. Indeed,
the necessity for such corporations springs from the exist-
ence of centers or agglomerations of population, having, by
reason of density and numbers, local or peculiar interests
and wants, not common to adjoining sparsely settled or
agricultural regions. It is necessary to draw the line which
defines the limits of the place and people to be incorporated.
This is with us a legislative function." 1 Dill. Mun. Corp.
(3d ed.), § 183. In England this power was formerly
given by royal grant or charter, presumably at the request
of the municipalities themselves, but in this country muni-
cipal corporations are purely the creatures of statutes:
" They possess no powers or faculties not conferred upon
them, either expressly or by fair implication, by the law
which creates them, or by other statutes applicable to
them." 1 Dill. Mun. Corp. (3d ed.) § 21.

It being conceded that the power to create municipal
corporations is vested exclusively in the legislature, the
question arises, Can this power be delegated, and, if so, to
whom, or to what agencies ? Counsel on both sides agree
that the legislature may delegate its functions in some
measure; but they disagree as to the law-making power to
carry the principle to the extent attempted in the act in
question. On the one side it is contended that the act ap-
proved February 2d, 1888, does not, in fact, delegate legis-
lative authority to the courts; that the statute and not the
court determines the extent and nature of the powers of

the corporation; that a statute may be valid though its taking effect may depend on some subsequent event, and that the powers and duties of the courts in relation to the mode of organizing towns are judicial in their nature; that the legislature and not the court prescribes the powers, duties and liabilities of the corporation; and, on the other, it is urged that the law of congress conferring upon the territorial legislature the right to create municipal corporations does not permit the legislature to delegate such right to the courts or judges; that the law is mandatory upon the court, is against public policy, and authorizes the taking of property without due process of law and without notice or opportunity to be heard; and that the including farming land in incorporated towns is unreasonable and unjust. The incorporation of towns by general statutory law is a departure from original methods, and is of comparatively modern date. And it would naturally be expected that the procedure for their organization by this means would not be uniform throughout the different states of the Union. It would be practically impossible for the legislature, by a general law, to fix and define the boundaries of every municipal corporation that might be organized under it; and that question is therefore determined in some other way designated by the general law of the particular jurisdiction. But the authority to incorporate, with us, as in England, has been restricted to cases in which compact communities already exist who desire to assume a corporate character, and have " police established for their local government." 1 Dill. Mun. Corp. (3d ed.), § 183.    But unless specially restrained by constitutional provisions, the legislature may delegate the power to determine the territorial limits of the municipal corporation, and thereby settle what property and persons will be subject to municipal control, to appropriate local bodies or boards of officers. 1 Dill. Mun. Corp., *supra; People v. Bennett*, 29 Mich. 451 (S. C. 18 Am. Rep. 110).    It would hardly seem probable that the

legislature, while professing to pass a law for the incor-
poration of "towns and villages," really intended to in-
clude therein rural districts or farming lands not platted
or laid out in lots or blocks, especially against the will
of the owner of such property, and yet the statute,
by its terms, covers and includes just such cases; and we
do not feel at liberty to construe it otherwise. We en-
tirely agree with the learned judge who decided the
case of *People v. Bennett, supra,* when he says that "There
are few if any acts of state bearing upon individuals more
important than those which determine their liability to be
included in particular municipalities; and the cases are
rare in which they have not been allowed an opportunity
of being heard in every step of the proceedings." And
where the individual has not expressly assented or im-
pliedly done so by settling and remaining in a dense
community needing corporate powers and privileges, it
seems too plain for argument that he should, at least, be
accorded a hearing before being compelled to subject him-
self or his property to the dominion of a municipality with
whose interests he has nothing in common. This view of
the law is adopted in the case of *People v. Bennett,*
above cited. In the case of *Borough of Blooming Valley,*
56 Pa. St. 66, it was held that farming land might be in-
cluded in the limits of a municipal corporation by consent
of the owner, but not otherwise. And in *Borough of
Little Meadows,* 28 Pa. St. 256, it was held that the com-
munity proposing to be incorporated was too sparse to be
called a village within the meaning of the law. On the
contrary, it has been held in New Hampshire, with equally
good reason, that the selectmen of a town in defining the
boundaries of a village could not exclude any part of it,
but must include the whole within the village limits. *Osgood
v. Clark,* 6 Fost. (N. H.) 307. Appellees contend, as be-
fore intimated, that a statute may be conditional, and its
taking effect made to depend upon some subsequent event;

and to a certain extent the principle is recognized by the courts. As an illustration, the legislature may enact a general statute for the formation of private corporations, and its taking effect as to any particular corporation may depend upon the assent of the parties interested; they may withhold their assent at pleasure, but cannot be forced to become incorporators. If they accept the terms and provisions of the law they are presumed to be benefited thereby, but if they reject they cannot be injured. While a statute may be conditional and only take effect upon the happening of a future event, we hold that the place where it is to operate, its "*situs*," must be fixed definitely by the legislature itself or delegated to some body or agency capable of exercising legislative functions, and not left to the will or caprice of localities to determine whether it shall be applicable to their particular community or not. Local option laws have been sustained by some courts, but the place where they were to take effect has always been defined by law and not left conditional upon the discretion of the people of any and every locality in the state.

To sustain the position of appellees, counsel cite the case of *Burlington v. Leebrick*, 43 Iowa, 252. The question there was as to the power of the city of Burlington to enlarge its limits by extending its boundaries over contiguous territory, and the court held that the law authorizing a petition for the purpose by the city council, to be presented to and acted upon by the circuit judge, and issues to be found and tried as in other proceedings, was not invalid as an unwarranted delegation of legislative power, basing the opinion on the ground that the determination of the issues by the court was a judicial act, a mere ascertaining of the condition upon which the law might take effect. But, in delivering the opinion, the court used the following language: "Nor is it proper to designate the thing to be accomplished by this statute as the creation of a corporation. A corporation is an artificial being, clothed with certain

powers.   In the present case such a corporation exists, known as the city of Burlington.    When the act sought in this petition is accomplished, no new corporation will have been created." From this language we might infer that, had the question before the court been that of the formation of a municipal corporation, the decision might have been different.    In the case of *Kayser v. Trustees of Bremen*, 16 Mo. 88, the incorporation of a town by the county court, in pursuance of a general statute, was upheld on the ground that the court acted judicially, and had no discretion, and no authority to vest any power in the corporation. And in the case of *Mayor, etc., v. Shelton*, 1 Head, 24, a law substantially like the one under consideration in this case was held valid and constitutional, for the reason that no legislative power was delegated to or exercised by the court.    This last decision, however, was under a constitution which provided that "the legislature shall have power to grant such charters of incorporation as they may deem expedient for the public good."   We do not feel bound by the decisions in these cases.   If the court, in either of the cases, acted judicially in the matter before it, then certainly it should have had a right or " discretion" to exercise its judgment; if its action was not judicial, then surely it must have been a delegated legislative power which it exercised.   Counsel for appellees also cite the case of *Blanchard v. Bissell*, 11 Ohio St. 96.   The controversy in that case was as to the validity of the statute in relation to the annexation of territory to cities, and it was claimed by Bissell, in a proceeding to enjoin the collection of certain taxes levied upon his property by the city council, that the order of the county commissioners for the annexation of the district embracing his property was void because it included his property with that of others, without his consent and against his remonstrance. The court sustained the law on the ground that the county commissioners were properly clothed with power to do the

acts objected to.   Each party was entitled to a hearing under that statute and the commissioners were empowered to order the annexation or not as they might deem reasonable and proper.   We agree with that decision, and if our statute were like the one upon which it was based, it would be stripped of its most objectionable features.   In the late case of *People ex rel. Rhodes v. Fleming,* 10 Col. 553 (16 Pac. Rep. 298), the supreme court of Colorado held that a law which provides that when the inhabitants of any part of the county, not embraced within the limits of any city or incorporated town, desire to be organized into a city or incorporated town they may apply by petition to the county court, and providing also for the manner of procedure in the organization of such contemplated town or city, was not in conflict with the constitution.   The decision in that case seems to have been based upon the broad ground that the legislature, if not expressly prohibited by the constitution, may delegate the power to form municipal corporations to unorganized private individuals; in other words, to the people themselves.   We cannot consent to follow the reasoning of that case or to concur in the conclusion reached by the learned court.   We think the better doctrine is that laid down by Judge Cooley in his work on Constitutional Limitations (4th ed.), 145–6, which is as follows: "The prevailing doctrine in the courts appears to be, that, except in those cases where, by the constitution, the people have expressly reserved to themselves a power of decision, the function of legislation cannot be exercised by them even to the extent of accepting or rejecting a law which has been framed for their consideration."   But we would not be understood as holding that the legislature could not delegate the power to put the machinery of municipal corporations in motion to courts which are not purely legal tribunals. The courts of quarter sessions of Pennsylvania, and the county courts of Oregon and perhaps of other states, are vested with administrative and, in a measure, representa-

tive powers; and they are properly intrusted with the functions attempted by our late territorial legislature, by the law in question, to be imposed upon the district judge.

We hold that a judicial court cannot exercise legislative functions and that the legislature cannot impose such power upon it. *People v. Bennett, supra; People v. Nevada*, 6 Cal. 143; *City of Galesburg v. Hawkinson*, 75 Ill. 152; *People v. Carpenter*, 24 N. Y. 86. Owing to the importance of this case we have given it all the consideration in our power under the circumstances, and we have been greatly aided in our labors by the learning and diligence of counsel on both sides. And we are constrained to hold that the statute under which the town of Puyallup was organized is invalid and cannot be sustained. The cause will therefore be remanded to the court below, with directions to overrule the demurrer and to proceed in accordance with this opinion. And it is so ordered.

STILES, HOYT and SCOTT, JJ., concur.

DUNBAR, J. — I concur in the result, because I do not think the petition was sufficient; but I cannot concur in the opinion that the act of the legislature was unconstitutional.