Octavia M. du Pont BREDIN, Constance S. Darden, Lucile E. du Pont Flint, Margaretta L. Greenewalt, Irene Sophie May, Eleanor F. Rust and Mariana du Pont Silliman, Plaintiffs,

v.

WILMINGTON TRUST COMPANY, Successor Trustee under Agreement of Trust dated January 30, 1920, by and between Irénée du Pont and Fidelity Trust Company (Wilmington Trust Company Trust No. 1114), et al., Defendants,

J. Bruce Bredin et al., Intervening Plaintiffs.

Court of Chancery of Delaware.

New Castle.

Dec. 8, 1965.

James M. Tunnell, Jr., and Johannes R. Krahmer, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

James T. McKinstry, of Richards, Layton & Finger, Wilmington, for Wilmington Trust Co., successor trustee.

Clair J. Killoran, of Killoran & Van-Brunt, Wilmington, for individual adult defendants and as guardian ad litem for minor defendants and for all issue of plaintiffs more remote than children, whether born or unborn.

William Prickett, Jr., and Rodman Ward, Jr., of Prickett & Prickett, Wilmington, for intervening plaintiffs.

SHORT, Vice Chancellor:

Plaintiffs, the income beneficiaries of an inter .vivos trust created by their father, Irénée du Pont, seek a declaration as to the nature and extent of their interest under the trust. Defendants are the trustee and plaintiffs' children and issue more remote than children. Intervening plaintiffs are the husbands of six of the plaintiffs. All of the material facts set forth in the complaint are admitted by defendants other than the trustee, and by the intervening plaintiffs. The trustee takes a neutral position and requests instructions as to its duties and obligations with respect to the trust. The parties have filed cross motions for judgment on the pleadings. This is the decision on those motions.

On January 30, 1920, Irénée duPont, now deceased, entered into a trust agreement with Fidelity Trust Company, a Pennsylvania corporation, as trustee. On October 17, 1927, Wilmington Trust Company, a Delaware corporation, was substituted as trustee of the trust.

Paragraph 3 of the trust agreement provides that the income from the trust is to be paid in monthly installments to eight named children of the settlor, each of such children upon attaining the age of twenty one to receive one-eighth of the entire net income.

Paragraph 5 of the agreement provides as follows: "5. In the event of the death of any one of the said children leaving issue, her proportionate part of the corpus or principal of the said trust estate shall be paid to the executor or administrator of the child so dying, free and discharged from any trusts. If, however, any one of the said children shall die leaving no issue her surviving, her share of the corpus or principal shall be held by the said Fidelity Trust Company for the survivors and held and disposed of as herein provided." It is this

paragraph which gives rise to this litigation.

Paragraph 7 of the trust instrument provides that in the event of the death of all of the eight children without leaving issue, the trust corpus is to pass free and discharged of any trust to Irene S. duPont, the wife of the settlor, if then living, or, if then dead, in equal shares unto the then living nieces and nephews of the settlor.

Of the eight income beneficiaries named in the trust agreement seven are the plaintiffs herein, the eighth, Doris Elise duPont, having died without issue surviving. Pursuant to the second sentence of paragraph 5 the share of the corpus upon which Doris Elise duPont was receiving the income has, since her death, been held by the trustee for the benefit of the remaining income beneficiaries, the plaintiffs herein. Plaintiffs have a total of thirty children now living as well as more remote issue. The controversy centers around the construction of the first sentence of paragraph 5 of the trust agreement. There are five possible constructions of this sentence:

(1) That a general power of appointment was created in income beneficiaries who died survived by issue;

(2) That a special power of appointment was created in such beneficiaries;

(3) That a vested remainder subject to be divested by death without issue was created in such beneficiaries;

(4) That a beneficial gift over to the executor or administrator of such beneficiaries was intended; and

(5) That a gift by implication to the surviving issue of an income beneficiary who died leaving issue was intended.

Plaintiffs contend that the first sentence of paragraph 5 should be construed as cre-

ating in them a general power of appointment. Plaintiffs' children and more remote issue contend that a special power to appoint to their class was created. Intervening plaintiffs contend that a vested remainder was created in the income beneficiaries subject to being divested by death without issue. The parties agree that it was not the settlor's intention to personally benefit the executor or administrator of a beneficiary who died leaving issue. With this position I am in agreement as I think it obvious that the settlor did not intend to benefit persons or corporations then, and even now, unknown.

 I think it is also obvious that the settlor could not have intended that an income beneficiary should also be the remainderman of the share of the corpus upon which she received the income. I say this because it is clear from the terms of the trust instrument that the interest of each life beneficiary was limited to income from the trust corpus. There was no provision for invasion of the principal for the benefit of any income beneficiary. Moreover, while the language of a particular disposition might well indicate an intention to give to the life beneficiary the remainder interest also, such a provision would be an oddity in the field of wills and trusts. Being so, the interest of the life beneficiary should not be construed as including the remainder unless the particular language compels it. Howland v. Clendenin, 134 N.Y. 305, 31 N.E. 977; Matter of Thompson's Estate (In re Clark), 274 App.Div. 49, 80 N.Y.S.2d 1. The case of Newlin v. Girard Trust Co., 116 N.J.Eq. 498, 174 A. 479, dealt with language that compelled the conclusion of an intended remainder. There the disposition was to the executor or administrator of the life beneficiary "so that it shall become a part of the Estate of the one so dying." There is no comparable language here present. Therefore, the contention of the intervening plaintiffs must be rejected.

Plaintiffs' contention that the agreement conferred, by implication, a power of appointment upon the income beneficiaries presents a more difficult question. The only case in point seems to be Matter of Thompson, supra. In construing similar language the Appellate Division of the Supreme Court of New York held that a general power of appointment was created in the life beneficiary. This decision was by a divided court, the minority favoring affirmance of the Surrogate who had viewed the disposition as creating a remainder in the life income beneficiary. Even the majority were in disagreement as to whether the power was general or special. The case has been criticized as to the type of power held to have been created. 5 American Law of Property, p. 485. Its authority as a precedent has also been questioned. Simes and Smith, The Law of Future Interests, § 892. Despite these criticisms I must agree with certain views expressed by the New York court. Thus, as I have heretofore indicated, I am satisfied as the New York court held that language such as that used in the first sentence of Paragraph 5 of the present trust instrument did not create in any life beneficiary a remainder interest. I am also in agreement with the holding of the Appellate Division that the executors or administrators of any beneficiary dying survived by issue were not intended to take in their representative capacities, but simply "as a conduit for the transmission of the gift from the testatrix [settlor] to its ultimate destination." To hold otherwise would require a finding of intention to benefit a life income beneficiary, or her estate, as to the remainder interest, a finding which has already been rejected. But I can not agree with the view of the New York court that the intent of the testatrix there was to create a power of appointment in the life beneficiary. I say this because I am satisfied that the language involved in Paragraph 5 of the trust agreement requires the application of the rule that a gift to A for life and if he dies without issue then to B creates a remainder in A's issue by implication. While I must concede that I am aware of no cases wherein substantially

similar provisions are made to those of Paragraph 5 of the present trust agreement, this fact in no way precludes, in my opinion, the application of the rule. If Paragraph 5 merely provided, as the second sentence thereof in fact does, that in the event of the death of a life income beneficiary without surviving issue then over, there could not, in the absence of language of the trust instrument indicating a contrary intent, be any doubt that the rule would apply. The fact that the settlor saw fit to use language which expressly referred to the death of a life beneficiary "leaving issue" does not, in the context of the language used, indicate an intention that the rule of implication of a remainder to issue should not apply. Plaintiffs and the contesting defendants agree with the view of the New York court that the reference in the first sentence of Paragraph 5 to "executor or administrator," was not intended to refer to personal representatives in their representative capacity. Since it is also my view that the naming of "executor or administrator" was merely the designation of a "conduit," what the settlor did here was simply to provide a channel through which the corpus of the trust funds should pass to its ultimate destination. In other words, the first sentence of Paragraph 5 in no way adds to or detracts from the implication which would arise from the second sentence if the latter were the sole provision of that paragraph.

Though conceding, as already observed, that "executor or administrator" merely denotes the conduit through whose hands any trust funds are to pass, plaintiffs suggest that the very use of those words indicates that the settlor had in mind a power of disposal in the life beneficiaries, or in the absence of the exercise of such power a gift to the beneficiaries' next of kin if a general power of appointment was intended, or issue if a special power was intended. Conceding the premise, I can not see that any additional significance should be accorded to the provision requiring payment to the executor or administrator of a life income beneficiary who dies survived by issue.

In support of their contention plaintiffs cite the case of In re Powell's Estate, 417 Pa. 164, 207 A.2d 857. In that case the inter vivos deed of trust provided that the trustee should pay the income to the settlor's son during his life, and upon his death to pay over the principal "to the Executor of the Will of the said George R. Powell, so that it shall become a part of his estate." The Supreme Court of Pennsylvania affirmed the holding of the trial court that a general power of appointment by will was created in the settlor's son. The Powell case is clearly distinguishable from the present because of the provision "so that it shall become a part of his estate." This language was the equivalent of that involved in Newlin v. Girard Trust Co., supra, in which the New Jersey court held that a remainder was created in the income beneficiaries. The Pennsylvania court held that the quoted phrase "merely caused a blending of the trust property with the estate of the son, the donee of the power." This interpretation may have been influenced by the fact that the case involved the question as to whether the trust property was taxable in the estate of the son. The holding may be consistent with the statutory tax scheme of Pennsylvania and prior decisions of the courts of that state. But apart from any tax question I am unable to agree with the court's interpretation. Had such language appeared in the present trust instrument I would be inclined to follow the view of the New Jersey court. It is interesting to note that the Supreme Court of Pennsylvania in commenting upon the Powell deed of trust, stated that it was "factually unique." Neither the Thompson case nor the Newlin case were cited in the court's opinion.

■ The rule of remainders by implication is well established in this state. It has been held applicable not only to testamentary dispositions but to inter vivos trusts as

well. duPont v. Equitable Security Trust Co., 35 Del.Ch. 514, 122 A.2d 429; A. B. v. Wilmington Trust Co., Del., 191 A.2d 98. In the duPont case, while the Supreme Court indicated that intention to make a gift by implication should be found less readily in the case of an inter vivos trust agreement than in a will, the court held that the question was nevertheless one of construction and that the rule would particularly apply where there was other evidence to sustain such a finding. Here, the very emphasis in the two sentences of Paragraph 5 of the trust agreement on death with and without issue is indicative of an intention to benefit that issue. It is consistent with the observation of this court in In re duPont, Del. Ch., 194 A.2d 309, that the over-the-years pattern of this settlor's giving "indicates that all of the children and grandchildren were equally the objects of his affection."

■ I conclude that the provisions of Paragraph 5 of the trust agreement of January 30, 1920 create a remainder by implication in the issue of the life income beneficiaries of the trust who die leaving issue.

The trustee is directed to pay the income from the trust in equal shares to the surviving income beneficiaries named in the trust instrument so long as each of such beneficiaries may live.

Upon the death of any income beneficiary leaving no issue her surviving the share of the corpus upon which such beneficiary was receiving income shall be held by the trustee for the benefit of the survivors, that is, the income on such share shall be paid to the survivors in equal shares.

Upon the death of any income beneficiary leaving issue, the trustee is directed to deliver to the executor or administrator of the beneficiary so dying the proportionate part of the corpus on which such beneficiary had received life income.

Order on notice.